UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

LAMBROS G. ORFANITOPOULOS,

    Plaintiffs,                                                 CASE NO.:

vs.

BELLSOUTH TELECOMMUNICATIONS, LLC,
a Foreign Limited Liability Company,
d/b/a AT&T

    Defendant.
_____/

## COMPLAINT

COMES NOW the Plaintiff, LAMBROS G. ORFANITOPOULOS (hereinafter referred to as "ORFANITOPOULOS" or "PLAINTIFF"), by and through the undersigned Counsel, and sues the Defendant, BELLSOUTH TELECOMMUNICATIONS, LLC, a Foreign Limited Liability Company d/b/a AT&T (hereinafter "AT&T" or "DEFENDNAT"), and alleges the following:

### JURISDICTION AND VENUE

1. This is a civil action with damages that exceed Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

2. This Court is vested with federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367.

3. Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1391(b) because all actions relevant giving rise to this claim arose in this Judicial Circuit.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to the maintenance of this action have been met.

5. On or about May 23, 2022, Plaintiff, ORFANITOPOULOS, timely filed a Charge of Discrimination with both the Palm Beach County Office of Equal Opportunity ("OEO") and the U.S. Equal Employment Opportunity Commission ("EEOC").  A copy of said Charge is attached hereto as **Exhibit "A"**.

6. A Notice of Dismissal was issued with regard to ORFANITOPOULOS' Charge of Discrimination following ORFANITOPOULOS' request for the issuance of a Right to Sue Notice. A copy of the Notice of Dismissal is attached hereto as **Exhibit "B"**.

7. On or about December 21, 2022, the EEOC issued a Notice of Right to Sue.  A copy of said Notice of Right to Sue is attached hereto as **Exhibit "C"**.

8. This Complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

## PARTIES

9. Plaintiff, LAMBROS G. ORFANITOPOULOS, is an individual who resided in Stuart, Florida, during the time of his employment with AT&T.

10. At all times herein mentioned, PLAINTIFF was employed by AT&T located at 1400 Neptune Dr., Boynton Beach, Florida 33426 and 1224 Hypoluxo Road, Lantana, Florida 33462.

11. PLAINTIFF was and is a member of a group protected under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. and the Florida Civil Rights Act, Fla. Stat. Ann. § 760.01 (FCRA)'s prohibitions against disability discrimination and a hostile work environment. Namely:

   a. He suffers from a military service-connected injury and disability; and

   b. He suffered an adverse employment action after experiencing hostility in the workplace due to his disability through unfavorable treatment compared to his non-disabled colleagues.

12. AT&T is duly authorized and licensed to do business in Palm Beach County, Florida. At all times material, AT&T was and is engaged in the business of providing communication services with more than fifteen (15) employees. As such, AT&T is an "employer" as defined by the ADA and the FCRA.

## GENERAL ALLEGATIONS

13. PLAINTIFF was employed at AT&T on a continuous basis from March 1, 2021 through March 4, 2022 as a Manager of Construction and Engineering a/k/a Network Manager.

14. PLAINTIFF's job duties included, but was not limited to, onboarding new employees, managing the fleet, providing driver training and testing, inspecting truck conditions, providing safety and quality meetings for his team, performing safety and quality checks, completing accident reports, ordering supplies, tools, and equipment as needed, ensuring work grounds are clean, safe, and secure, and providing technical support for his team.

15. PLAINTIFF excelled in his managerial job duties and was recognized and acknowledged by AT&T for his work and dedication, as less than five months into his new position, PLAINTIFF received a 13.99% pay increase on July 15, 2021.

16. Just a few days prior to the notice of the pay raise and after PLAINTIFF had successfully cleaned up and organized the Palm Beach location, AT&T reassigned PLAINTIFF to a newly formed pole transfer group in Lake Worth to manage two 15-man teams.

17. On or around November 2021, after PLAINTIFF began working at the Lake Worth location, AT&T had a change in management. Sal Randazzo became PLAINTIFF's direct manager, whereas previously PLAINTIFF was hired by and worked under the direction of Thomas Moreland.

18. At this time, PLAINTIFF was successfully managing his Lake Worth teams and completing all aspects of his job duties without issue, having received no disciplinary warnings, counselings, or otherwise.

19. However, shortly after Mr. Randazzo became PLAINTIFF's direct supervisor, Mr. Randazzo advised PLAINTIFF that he would be required to attend Line Construction School, and during said training, would be required to pole climb – an activity that was not part of PLAINTIFF's managerial role.

20. PLAINTIFF, in response to the new requirement, advised Mr. Randazzo that while he was ready and willing to attend Line Construction School, he was physically unable to climb poles due to a military service-connected disability.

21. Mr. Randazzo immediately dismissed PLAINTIFF's disclosure of his disability, informing PLAINTIFF that as a manager, he must be able to instruct technicians how to climb, so he must climb himself, despite these technicians attending Line Construction School where they are trained to climb from certified instructors.

22. Immediately following PLAINTIFF's disclosure of his disability and request for accommodation in the form of not climbing poles, AT&T began to discriminate and retaliate against PLAINTIFF.

23. For example, Mr. Randazzo advised PLAINTIFF he would be hiring a new manager to take over one half of PLAINTIFF's team of technicians in January 2022.

24. When the new manager, Andre (last name unknown), began working for AT&T, he acquired 14 of PLAINTIFF's technicians.

25. In an effort to assist Andre in his new role, PLAINTIFF made an effort in January 2022 to share the driver files with Andre so he did not have to create them on his own. When PLAINTIFF made this attempt to share the files, he received a message from corporate advising him he was not permitted to use a shared drive for security purposes. PLAINTIFF responded by immediately deleting the files.

26. Overall, PLAINTIFF received positive feedback, reviews, and bonuses during his employment with AT&T; however, Mr. Randazzo continued to target PLAINTIFF. Such actions included, without limitation:

   a. Denying PLAINTIFF the use of even one of the 36 bucket trucks in the pole transfer unit assigned to the other Network Manager, Andre;

   b. Removing PLAINTIFF from Line Construction School that he was scheduled to attend on January 10, 2022; and

   c. Treating Andre, who did not suffer any disability or other limitation, more favorably in terms of support, supplies, and equipment.

27. On March 4, 2022, AT&T terminated PLAINTIFF without warning, having provided no prior disciplinary notices or warnings.

28.     AT&T, via Mr. Randazzo, informed PLAINTIFF he had been terminated for 1) cursing in front of technicians, 2) violating a security rule with regard to driver files, and 3) not keeping his employees 6-feet from one another during the COVID pandemic.

29.     Each of the reasons was provided as a pretext to terminate PLAINTIFF as they had either been previously corrected months prior (driver files in January 2022) or were simply unreasonable allegations that held PLAINTIFF to a higher standard than other similarly situated Network Managers, such as a rogue curse word or failing to keep knowledgeable employees 6-feet apart at all times.

30.     Rather, AT&T used these targeted allegations against PLAINTIFF to effectuate his termination under pretext and in response to PLAINTIFF's disclosure of a service-connected disability and request for accommodation to not climb poles, a task outside of his managerial position.

31.     As a direct and proximate result of AT&T's actions, PLAINTIFF has suffered and will continue to suffer lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment, justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and punitive damages according to proof against AT&T.

32.     PLAINTIFF has been required to retain the legal services of the undersigned Counsel to enforce his rights under ADA and the FCRA and is required to pay his attorney a reasonable fee for services rendered in this case.

## COUNT I
## PLAINTIFF, LAMBROS G. ORFANITOPOULOS', CLAIM OF DISABILITY DISCRIMINATION IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT

33. Plaintiff, LAMBROS G. ORFANITOPOULOS, adopts and incorporates by reference the allegations in Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34. Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, requires covered employers, such as AT&T, to provide reasonable accommodations to otherwise qualified employees with disabilities. Reasonable accommodations include, but are not limited to, ensuring compliance with medical work restrictions.

35. AT&T is, and at all material times was, engaged in commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and is an "employer" as defined by 42 U.S.C. § 12111(5).

36. At the time of his termination from employment with AT&T, PLAINTFF was a qualified individual with a disability as contemplated by 42 U.S.C. § 12111(8).

37. PLAINTIFF is otherwise a qualified individual with a disability who was able to perform all of the functions of his position as a Network Manager, but required certain accommodations including being excused from engaging in pole climbing, a new task he was informed of in or around November 2021 upon a change in management.

38. Specifically, AT&T was aware of Plaintiff's service-connected injury and his inability to engage in certain physical activity such as pole climbing, which had never previously been a job requirement for his position.

39. After being advised of his disability and request for accommodation, AT&T subsequently discriminated and retaliated against the PLAINTIFF.

40. Specifically, in retaliation to PLAINTIFF alerting management of his disabilities and associated physical limitation, AT&T took an adverse job action against PLAINTIFF, including, but not limited to, terminating his employment under pretext of alleged violations of work policies that were previously addressed and remediated.

41. AT&T used PLAINTIFF's alleged violation of company policy, which occurred months prior to his termination, as grounds for termination despite PLAINTIFF's immediate action to correct the unintentional error as soon as he had been notified.

42. PLAINTIFF's fellow colleagues who did not have any known disabilities, such as Andre, were not subject to the same discriminatory treatment including having resources removed, being pulled from trainings, and, ultimately, terminated under pretext, despite the same or similar conduct.

43. Rather AT&T used the allegations of violating a company policy as a pretext to effectuate PLAINTIFF's termination, following his request for reasonable accommodation including not performing pole climbing, a physical activity outside of his job description.

44. AT&T's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630 through retaliation against PLAINTIFF after he requested a reasonable accommodation in the workplace.

45. As a result of AT&T's retaliatory actions, PLAINTIFF has suffered mental anguish, loss of earnings, loss of ability to earn money and other monetary damages. The losses and expenses are permanent and continuing and PLAINTIFF will suffer losses in the future.

46. AT&T's actions caused, and continue to cause, irreparable harm through PLAINTIFF's loss of gainful employment and through loss of valuable employment benefits

including group health insurance, life insurance, disability insurance, all of which he would have received had he not been unlawfully terminated.

47. The actions of AT&T were so malicious and in such reckless indifference to the statutorily protected rights of PLAINTIFF as to entitle him to receive an award of punitive damages to punish AT&T and to deter it, and others like it, from engaging in such conduct in the future.

## COUNT II
## PLAINTIFF, LAMBROS G. ORFANITOPOULOS', CLAIM OF DISABILITY DISCRIMINATION IN VIOLATION OF FLORIDA CIVIL RIGHTS ACT

48. Plaintiff, LAMBROS G. ORFANITOPOULOS, adopts and incorporates by reference the allegations in Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

49. At all material times hereto, AT&T failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

50. AT&T is an "employer" as defined by § 760.02(7) of the Florida Statutes.

51. At the time of his termination with AT&T, PLAINTIFF was a qualified individual with a disability.

52. PLAINTIFF is otherwise a qualified individual with a disability who was able to perform all of the functions of his position as a Network Manager, but required certain accommodations including being excused from engaging in pole climbing, a new task he was informed of in or around November 2021 upon a change in management.

53. Specifically, AT&T was aware of Plaintiff's service-connected injury and his inability to engage in certain physical activity such as pole climbing, which had never previously been a job requirement for his position.

54. After being advised of his disability and request for accommodation, AT&T subsequently discriminated and retaliated against the PLAINTIFF.

55. During the course of PLAINTIFF's employment with AT&T, PLAINTIFF was subjected to a discriminatory work environment because of his disability.

56. Specifically, in retaliation to PLAINTIFF alerting management of his disabilities and associated physical limitation, AT&T took an adverse job action against PLAINTIFF, including, but not limited to, terminating his employment under pretext of alleged violations of work policies that were previously addressed and remediated.

57. AT&T used PLAINTIFF's alleged violation of company policy, which occurred months prior to his termination, as grounds for termination despite PLAINTIFF's immediate action to correct the unintentional error as soon as he had been notified.

58. PLAINTIFF's fellow colleagues who did not have any known disabilities, such as Andre, were not subject to the same discriminatory treatment including having resources removed, being pulled from trainings, and, ultimately, terminated under pretext, despite the same or similar conduct.

59. Rather AT&T used the allegations of violating a company policy as a pretext to effectuate PLAINTIFF's termination, following his request for reasonable accommodation including not performing pole climbing, a physical activity outside of his job description.

60. AT&T's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of the Florida Civil Rights Act.

61. Any alleged nondiscriminatory reason for this treatment of PLAINTIFF by AT&T is mere pretext for the actual reason for discriminating against PLAINTIFF based on his disabilities and request for reasonable accommodation.

62. AT&T's actions were malicious and were recklessly indifferent to PLAINTIFF's rights pursuant to Fla. Stat. § 760.10.

63. The aforementioned actions of AT&T were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

64. As a direct and proximate result of the foregoing, PLAINTIFF has suffered and continues to suffer mental anguish, loss of earnings, loss of ability to earn money and other monetary damages. The losses and expenses are permanent and continuing and PLAINTIFF will suffer losses in the future.

65. AT&T's actions caused, and continue to cause, irreparable harm through PLAINTIFF's loss of gainful employment and through the loss of valuable employment benefits including group health insurance, life insurance, disability insurance, all of which he would have received had he not been unlawfully terminated.

66. The actions of AT&T were so malicious and in such reckless indifference to the statutorily protected rights of PLAINTIFF as to entitle him to receive an award of punitive damages to punish AT&T and to deter it, and others like it, from engaging in such conduct in the future.

### COUNT III
### PLAINTIFF, LAMBROS G. ORFANITOPOULOS', CLAIM OF FAILURE TO REASONABLY ACCOMMODATE AS REQUIRED BY THE AMERICANS WITH DISABILITIES ACT

67. Plaintiff, LAMBROS G. ORFANITOPOULOS, adopts and incorporates by reference the allegations in Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

68. PLAINTIFF, by being subjected to the adverse treatment more particularly described above in the General Allegations, was discriminated against in violation of his rights under Section 102 of the ADA, 42 U.S.C. §12112, in that AT&T failed to provide PLAINTIFF with reasonable accommodations for his disabilities, as required by the ADA.

69. Specifically, AT&T required PLAINTIFF to perform duties outside of his regular job responsibilities, leading PLAINTIFF to request the reasonable accommodation of being excused from one single physical activity: pole climbing.

70. Such request for accommodation would not cause undue hardship to AT&T as pole climbing was already a task outside of PLAINTIFF's assigned job duties and responsibilities.

71. AT&T did not engage in any process, let alone an interactive one, to determine whether PLAINTIFF's request for accommodation was reasonable and whether said accommodation to not climb poles as a supervisor would affect his ability to continue to perform his job duties.

72. Instead, AT&T engaged in a series of discriminatory actions against PLAINTIFF, removing his tools and equipment, removing him from scheduled classes, and creating false allegations of misconduct.

73. As a result of AT&T's failure to accommodate PLAINTIFF's disabilities, PLAINTIFF was terminated from his employment with AT&T.

74. AT&T's failure to accommodate Plaintiff's reasonable request demonstrates AT&T's lack of good faith in this matter.

75. AT&T's actions were a willful violation of the Americans with Disabilities Act.

76. As a result of AT&T's discriminatory actions, PLAINTIFF has suffered mental anguish, loss of earnings, loss of ability to earn money and other monetary damages. The losses and expenses are permanent and continuing and PLAINTIFF will suffer losses in the future.

77. AT&T's actions caused, and continue to cause, irreparable harm through PLAINTIFF's loss of gainful employment and through loss of valuable employment benefits including group health insurance, life insurance, disability insurance, all of which he would have received had he not been unlawfully terminated.

78. The actions of AT&T were so malicious and in such reckless indifference to the statutorily protected rights of PLAINTIFF as to entitle him to receive an award of punitive damages to punish AT&T and to deter it, and others like it, from engaging in such conduct in the future.

## COUNT IV
## PLAINTIFF, LAMBROS G. ORFANITOPOULOS', CLAIM OF FAILURE TO REASONABLY ACCOMMODATE AS REQUIRED BY THE FCRA

79. Plaintiff, LAMBROS G. ORFANITOPOULOS, adopts and incorporates by reference the allegations in Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

80. PLAINTIFF, by being subjected to the adverse treatment more particularly described above in the General Allegations, was discriminated against in violation of his rights under the FCRA, in that AT&T failed to provide PLAINTIFF with reasonable accommodations for his disabilities, as required by the FCRA.

81. Specifically, AT&T required PLAINTIFF to perform duties outside of his regular job responsibilities, leading PLAINTIFF to request the reasonable accommodation of being excused from one single physical activity: pole climbing.

82. Such request for accommodation would not cause undue hardship to AT&T as pole climbing was already a task outside of PLAINTIFF's assigned job duties and responsibilities.

83. AT&T did not engage in any process, let alone an interactive one, to determine whether PLAINTIFF's request for accommodation was reasonable and whether said accommodation to not climb poles as a supervisor would affect his ability to continue to perform his job duties.

84. Instead, AT&T engaged in a series of discriminatory actions against PLAINTIFF, removing his tools and equipment, removing him from scheduled classes, and creating false allegations of misconduct.

85. As a result of AT&T's failure to accommodate PLAINTIFF's disabilities, PLAINTIFF was terminated from his employment with AT&T.

86. Any alleged nondiscriminatory reason for this treatment of PLAINTIFF by AT&T is mere pretext for the actual reason for discriminating against PLAINTIFF based on his disabilities and request for reasonable accommodation.

87. AT&T's failure to accommodate Plaintiff's reasonable request demonstrates AT&T's lack of good faith in this matter.

88. AT&T's actions were malicious and were recklessly indifferent to PLAINTIFF's rights pursuant to Fla. Stat. § 760.10.

89. The aforementioned actions of AT&T were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

90. As a direct and proximate result of the foregoing, PLAINTIFF has suffered and continues to suffer mental anguish, loss of earnings, loss of ability to earn money and other

monetary damages. The losses and expenses are permanent and continuing and PLAINTIFF will suffer losses in the future.

91. AT&T's actions caused, and continue to cause, irreparable harm through PLAINTIFF's loss of gainful employment and through the loss of valuable employment benefits including group health insurance, life insurance, disability insurance, all of which he would have received had he not been unlawfully terminated.

92. The actions of AT&T were so malicious and in such reckless indifference to the statutorily protected rights of PLAINTIFF as to entitle him to receive an award of punitive damages to punish AT&T and to deter it, and others like it, from engaging in such conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, LAMBROS G. ORFANITOPOULOS, demands judgment against Defendant, BELLSOUTH TELECOMMUNICATIONS, LLC, a Foreign Limited Liability Company d/b/a AT&T and requests the following relief:

1. Enter judgment in favor of PLAINTIFF for AT&T's violation of the ADA and the FCRA.
2. Award PLAINTIFF actual damages suffered;
3. Award back pay and value of lost employment benefits to PLAINTIFF;
4. Award front pay to PLAINTIFF for the years he would have worked absent AT&T's discriminatory treatment;
5. Enter judgment in favor of PLAINTIFF for compensatory damages for the embarrassment, anxiety, humiliation, and emotional distress PLAINTIFF have suffered and continue to suffer;

6. Award PLAINTIFF punitive damages;

7. Award to PLAINTIFF all costs and reasonable attorney's fees incurred in connection with this action;

8. Award prejudgment interest on all monetary recovery obtained;

9. An injunction permanently enjoining BELLSOUTH TELECOMMUNICATIONS, LLC, a Foreign Limited Liability Company d/b/a AT&T, its officers, agents, employees, assigns, and all persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of disability; and

10. Grant such additional or alternative relief as may appear to the court to be just and equitable.

## JURY TRIAL DEMAND

Plaintiff, LAMBROS G. ORFANITOPOULOS, demands a trial by jury on all issues so triable.

Dated February 16, 2023.

**Sconzo Law Office, P.A.**
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
SAMANTHA L. SIMPSON, ESQ.
Florida Bar No.: 1010423
**Primary Email:** greg@sconzolawoffice.com
**Primary Email:** samantha@sconzolawoffice.com
**Secondary Email:** alexa@sconzolawoffice.com